E. L. Kearns and A. G. Smith *v.* Joseph Howley, Chairman of Democratic County Committee, and Thomas Kane, Secretary of Democratic County Committee, Appellants.

*Equity—Jurisdiction—Unincorporated associations—Political parties.*

The Act of June 16, 1836, P. L. 784, confers upon the courts of common pleas in Pennsylvania only the power of the English court of chancery, and as the English chancellor has always disclaimed authority to interfere with the action of voluntary and unincorporated associations where no right of property is involved, courts of equity in Pennsylvania will do the same.

A court of equity in Pennsylvania has no jurisdiction to restrain by injunction the chairman of a county committee of a political party from filling vacancies in violation of the rules of the party, where it appears that no property rights are involved. The fact that the committee disburses large sums for campaign purposes does not prove that any property right is involved, inasmuch as the members of the committee have no personal ownership in the fund.

Argued May 11, 1898. Appeal, No. 89, Oct. T., 1898, by defendants, from decree of C. P. No. 2, Allegheny Co., April T., 1898, No. 1035, on bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for an injunction against the chairman and

secretary of the democratic county committee of Allegheny county.

The facts appear by the opinion of the Supreme Court.

The court below entered the following decree:

Let an injunction issue forbidding the defendants, or either of them, from adding to the roll, exhibit No. 3, any names, upon pretense of filling vacancies, or of adding those who have or claim to have produced credentials to the chairman since the convention, and from striking from said roll any names, on pretense that the same were not properly thereon; and let there be annexed hereto a copy of the roll, exhibit No. 3.

*Error assigned* was decree of the court.

*Johns McCleave*, with him *W. J. Brennen* and *D. T. Watson*, for appellants.—The court had no jurisdiction: Kneedler v. Lane, 3 Grant, 523; Rigby v. Connol, L. R. 14 Ch. Div. 482; Kerr on Injunctions, 1; Baird v. Wells, L. R. 44 Ch. Div. 661; McKane v. Adams, 123 N. Y. 609; Blair v. Henrichsen, 151 Ill. 41; Smith v. McCarthy, 56 Pa. 359; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 428; People v. Board of Trade, 80 Ill. 134; State v. Odd Fellows' Grand Lodge, 8 Mo. App. 148; Lyttelton v. Blackburne, 45 L. J. Ch. 219; Thompson v. Society of Tammany, 17 Hun, 305.

The ground for the intervention of the courts in the affair of unincorporated associations is the infringement of the property rights of the aggrieved member: Hopkinson v. Marquis of Exeter, L. R. 5 Eq. Cases, 66; Sale v. First Reg. Baptist Church, 62 Iowa, 26; Otto v. Journeymen Tailors' P. & B. Union, 75 Cal. 308; White v. Brownell, 2 Daly, 329; Schmidt v. Abraham Lincoln Lodge, 84 Ky. 490; Smith v. Hollis, 33 W. N. C. 485.

But even if the learned judge were right in holding that a Pennsylvania chancellor has the supervision of all the old women's sewing circles and tea parties in the state, with the powers of equity to enforce observance of their rules because they are " unincorporated societies or associations," yet his interpretation of the rules of the democratic party upon which he based his order is certainly erroneous.

*W. H. S. Thomson*, with him *J. M. Stoner, Frank Thomson* and *C. A. Fagan*, for appellees.—Equity has jurisdiction in a case

like the present one: Kerr v. Trego, 47 Pa. 292; Wesley Church
v. Moore, 10 Pa. 280; Gass's App., 73 Pa. 39.

It is argued that the court is without jurisdiction, because no
property or property rights are involved. While the county
committee has no property except furniture, etc., at its head-
quarters, it disburses from time to time large sums of money for
campaign purposes. But is it true that property or property
rights, in the strict sense of that term, must be involved to give
the court jurisdiction? We think not. The wording of the
act of assembly does not justify this position. It is true that in
most of the adjudicated cases property rights were involved and,
from the language of the court in certain cases, it might be in-
ferred that the jurisdiction was based on that ground. But in
other cases the true distinction has been drawn: Metropolitan
Base Ball Club v. Simmons, 17 W. N. C. 153.

But it is urged that, even if the court had jurisdiction, the
judge erred in his construction of the rule providing for an an-
nouncement of the list of the committee at the county conven-
tion. We contend that the court was not only justified in its
construction of the rules, but might well have gone further, and
held that in the absence of fraud alleged under oath the list as
prepared by the chairman of the county committee and an-
nounced at the convention was not simply prima facie, but
absolutely and conclusively, the list of county committeemen
elect.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

The members of the democratic county committee of Alle-
gheny county by the rules of the party are elected at the pri-
mary elections on the last Saturday of August in each year.
By Rule VII. the election officers must certify the vote for each
candidate to the executive committee of each ward, borough
and township, and also to the chairman of the county commit-
tee. The election of the delegates who are to compose the
county convention to nominate candidates for county offices
are elected at the same time, and the convention meets the fol-
lowing Monday or Tuesday. Rule VII. having provided for
certification of the vote to the county chairman, Rule VIII. pro-
vides that "a list of the county committee so elected shall be
prepared by the chairman, and announced at the county con-

vention." By Rule X. the county committee so chosen must meet the first Monday of April following, and elect a chairman to serve for the ensuing year. The defendant, Joseph Howley, had been elected chairman on the first Monday of April, 1897, and therefore was chairman in August of that year at the county convention. He announced the members elect to the county committee, so far as returns had been received. Quite a number of districts had not certified the election of members of the committee; these were announced as vacancies, to the number of 258, out of a roll of 521. The chairman, Howley, at the proper time, called a meeting of the county committee, as provided in Rule X., for the first Monday of April, 1898; he was a candidate for re-election as chairman. The bill filed the Thursday before the meeting averred that in a large number, 258, of the districts announced as vacant, no duly elected committeeman had been certified; that Howley, in violation of the rules, had already filled vacancies with names of persons not elected, and was about to complete the roll with names of others appointed by himself; further, that he had erased from the roll the names of duly elected members, and was about to wrongfully appoint others. The prayer of the bill was that Howley be restrained by injunction from erasing names, and that he be enjoined from filling vacancies, or in any way tampering with or interfering with the roll. The defendants made no answer, but contented themselves with denying the jurisdiction of the court. After hearing testimony, the learned judge of the court below found the material facts averred by plaintiff to be true, and as a conclusion of law that the court had jurisdiction to entertain the bill and grant relief; therefore, he entered a decree restraining the defendants or either of them from adding names to the roll upon any pretense, or striking therefrom names, and annexed to the decree a roll of those whose names should properly appear thereon. Thereupon defendants bring this appeal and assign for error want of jurisdiction in the court.

We see in the evidence no reason to question the correctness of the court's finding of fact. Howley probably filled the vacancies with the names of democrats personally agreeable to himself, and it is by no means incredible they accorded with him in his ambition to continue himself in office. His opinion

was that, by virtue of his office, he had power to fill the vacancies, and it is not clear that he was wrong in this opinion. However this may be, if he usurped the power or wrongfully exercised it, he was amenable to his party, which could dethrone him and visit him with political penalties. But the question here is, has a court of equity jurisdiction at the instance of dissatisfied members of the party or committee to correct and make up the roll, and force warring democrats to associate with each other, when they are averse to such associations.

It is clear to us that no property right in plaintiffs or in others as members of the county committee existed. As a purely political committee it neither owned nor pretended to own or to derive any benefit from anything of value held by them in common. That money for legitimate election expenses was contributed by democrats to the committee, and by the members paid out, gave the one who handled the share put in his possession no personal ownership in it. He could derive honestly no personal benefit from the fund, and consequently had no property right. Such a duty would be a very "dry trust," if honestly executed. But the learned judge of the court below was of opinion that, even if membership of the committee conferred no property right, nevertheless, under the act of June 16, 1836, which confers on the common pleas the jurisdiction and powers of a court of chancery in "The supervision and control of all corporations, other than those of a municipal character, and unincorporated societies or associations and partnerships," he had jurisdiction to entertain the bill and found thereon his decree. We have more than once decided that this act gives to the courts only the powers of the English court of chancery. See Kneedler v. Lane, 3 Grant, 523, where Justice STRONG fully and clearly construes the act, and so pronounces. The English chancellor has always disclaimed authority to interfere with the action of voluntary and unincorporated associations where no right of property was involved : Rigby v. Connol, L. R. 14 Ch. Div. 482. We will not cumber this opinion with further citations from the English reports to sustain this view, for it is scarcely questioned by counsel for appellee. The court below we think was misled into claiming for the courts of Pennsylvania enlarged chancery powers, because of the tendency of our late legislation to regulate primary

elections and prevent fraud and corruption by the election officers. It may be, if this bill had aimed to prevent a threatened violation of law by any of these officers, it could have been maintained. But there is no statutory injunction or prohibition directed to chairmen and secretaries of county committees; they are amenable alone to their party, which is purely political. The authority of the courts in such a case is thoroughly discussed by the New York court of appeals in McKane v. Adams, 123 N. Y. 609. In that case McKane filed a bill to enjoin the democratic committee of Kings county from denying his membership. The court dismissed it, saying in the course of an elaborate opinion: "His status therefore is that, though his town association elected him as a delegate to the general committee of the county organization, the members of that body have refused to admit him to association with them in their office. And if they would and will not associate with him, upon what reasoning or principle should they be compelled to, and the aid of a court of justice invoked? The right to be a member is not conferred by any statute; nor is it derivable as in the case of an incorporate body. It is by reason of the action and of the assent of members of the voluntary association that one becomes associated with them in the common undertaking, and not by any outside agency or by the individual's action. Membership is a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced. So when, as by the plaintiff's own showing, the committee refused to admit him as a member or to confirm his election, he was remediless against that refusal. No rights of property or of person were affected, and no rights of citizenship were infringed upon."

We adopt this language as expressing our opinion in this case, without referring to and citing the many cases to which counsel on both sides have called our attention, for none of them is of such authority as to move us from our previous decisions. The constitution and statutes of the commonwealth guarantee to all citizens the right of self-government by protecting them in the exercise of the elective franchise for all officers voted for at state and local elections; and lately, the law has gone further, and has so far recognized political parties as to pass an act prescribing the duties of officers at primary elec-

tions, and imposing severe penalties for misconduct. But beyond this, political parties and party government are unknown to the law; they must govern themselves by party law. The courts cannot step in to compose party wrangles, or to settle factional strife. If they attempt it, it may well be doubted whether they would have much time for anything else.

We reverse the decree and direct that the bill be dismissed at costs of appellee.