# Spayd, Appellant, *v.* Ringing Rock Lodge et al.

*Unincorporated associations—Membership—Expulsion—Validity of proceedings—Constitutional right of petition.*

1. A court of equity has jurisdiction to entertain a bill, praying for a decree to reinstate to membership a person who is alleged to have been wrongfully expelled from an unincorporated association, which owns certain beneficial funds, in which the plaintiff would be entitled to share, if he were a member in good standing.

2. Where the by-laws of an unincorporated association provide a proper tribunal to pass upon the question of the expulsion of members, members must resort to such tribunal, and, if the proceedings before the tribunal are conducted in conformance with the by-laws, the judgment of the tribunal is final and conclusive.   But where no evidence was produced to support the charge, the proceedings were irregular, and the plaintiff was not concluded thereby, and he can subsequently raise the question of their legality.

## 140    SPAYD, Appellant, v. RINGING ROCK LODGE.

3. Under the provisions of the Bill of Rights in the Constitution of Pennsylvania, providing for the right of petition, there is nothing to prevent a citizen from voluntarily committing the exercise of such right temporarily to an association of which he is a member. But where it is claimed that a citizen has temporarily relinquished such a fundamental right to such an association, it must be by language so clear, definite and positive that there may be no possibility of mistake as to his intention to do so, especially where his withdrawal from such association would result in divesting him of valuable property rights. When the contract, which he made with his fellow associates in the brotherhood, is attempted to be extended beyond its obvious meaning, and so construed as to deprive him of a constitutional right, which he had not definitely relinquished, even temporarily, he has the right to reply that he made no such contract.

4. Where a bill in equity is filed by a former member of an unincorporated association seeking reinstatement, and it appears that the member was expelled by the association for petitioning the legislature, in alleged violation of a by-law which provided that no member should use his influence to defeat any action taken by legislative representatives of the association, and it further appears that there was no evidence offered as to the alleged action taken by the legislative representatives, the expulsion of the member was illegal and he will be reinstated.

5. A rule of an unincorporated association which provides that "any member of the brotherhood using his influence to defeat any action taken by a national legislative representative or any action regularly taken by legislative representatives in meeting assembled, or of legislative boards under their proper authorities, shall, upon conviction thereof, be expelled" is not sufficiently definite to include a waiver of a member's constitutional right to petition the legislature to redress his grievance, or justify his expulsion for exercising that right.

Argued December 2, 1919.    Appeal, No. 98, Oct. T., 1919, by plaintiff, from decree of C. P. Montgomery County, Oct. T., 1916, No. 8, sitting in equity, dismissing bill for injunction in the case of H. F. Spayd v. Ringing Rock Lodge No. 665, Brotherhood of Railroad Trainmen, Pottstown, et al.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Bill in equity for a mandatory injunction to compel the reinstatement of plaintiff as a member of an unincorporated association. Before SWARTZ, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and conclusions of law and the decree of the court.

*Cyrus G. Derr,* and with him *Henry M. Brownback,* for appellant.—The by-law imposing the penalty of expulsion upon a member for exercising a constitutional right is against public policy and void: Article I, section 20, Constitution of Pennsylvania; Schneider v. Local Union No. 60, 40 Southern Reporter 700.

The provisions for the legislative board to represent the brotherhood are illegal: 15 Amer. & Eng. Ency. of Law, 969; 9 Cyc., page 486; Clippinger v. Hepbaugh, 5 Watts & Sergeant 315; Spalding v. Ewing, 149 Pa. 375.

*Henry Freedley,* and with him *H. D. Saylor,* for appellee, cited: Sperry's App., 116 Pa. 391; Kearns v. Howley, 188 Pa. 116; U. S. v. Cruikshank, 92 U. S. 542; Williamson's Case, 26 Pa. 9.

OPINION BY KELLER, J., February 28, 1920:

The plaintiff was expelled from the defendant unincorporated association, of which he had been a member for fifteen years. If he was lawfully expelled, he has no complaint; if he was not, he is unlawfully deprived of his interest in the accumulated funds of the association, which, it is alleged in the bill and not denied in the answer, amount to $4,000,000, and loses the benefit of the certificate issued by the association's beneficiary department which entitled him to the sum of $1,500 in the event of his total and permanent disa-

bility, or his wife to the same amount in case of his death. There is, therefore, a sufficient property right involved to give a court of equity and this court jurisdiction: Kearns v. Howley, 188 Pa. 116; Neff v. Daughters of Liberty, 62 Pa. Superior Ct. 251; Manning v. Klein, 1 Pa. Superior Ct. 210; Lysaght v. Stonemasons' Assn., 55 Mo. App. 538.

The expulsion was based on an alleged violation of Rule No. 23 of the General Rules of the Brotherhood, which provides inter alia, that "any member of the Brotherhood using his influence to defeat any action taken by a national legislative representative or any action regularly taken by legislative representatives in meeting assembled, or of legislative boards under their proper authorities, shall, upon conviction thereof, be expelled." It was charged that the appellant had violated this rule by signing a petition to the General Assembly of Pennsylvania, asking for the repeal of the act commonly known as the Full Crew Law.

A trial was had before the lodge which sustained the charge and expelled the appellant from membership. On successive appeals to the president and the Grand Lodge (the course prescribed in the constitution and rules of the brotherhood), this action was sustained.

This bill was then filed praying that such expulsion be declared void on three grounds: (1) That the trial on said charge was void and illegal because there was no proof presented that he had violated Rule 23 as aforesaid; (2) that the said provision in Rule 23, if construed so as to deprive appellant of his constitutional right to petition for redress of grievances, is in contravention of law and public policy and void; (3) that the whole legislative department of the defendant brotherhood, to which said Rule 23 pertains, is illegal and against public policy as an improper interference with the law-making branch of the Commonwealth.

(1) The learned trial judge of the court below correctly stated the law in his quotation from Com. v.

Pike Beneficial Society, 8 W. & S. 247: "The courts entertain a jurisdiction to preserve these tribunals in the line of order, and to correct abuses; but they do not inquire into the merits of what has passed in rem judicatam in a regular course of proceedings." But it has been held that the proceedings in such a tribunal were wholly irregular and justified their being set aside by courts where no evidence was received on the trial to support the charge; that while courts will not go into the merits of the controversy, they will regard want of evidence as an irregularity fatal to the proceedings: Marion Ben. Society v. Com., 31 Pa. 82; Society v. Meyer, 52 Pa. 125. The eleventh paragraph of the plaintiff's bill distinctly averred that at the trial no evidence was produced that any action relative to the Full Crew Law had been taken by a national legislative representative or any action regularly taken by legislative representatives in meeting assembled or by any legislative board under proper authority, as specified in Rule 23, which was the gravamen of the charge. The answer did not deny this averment, and practically admitted it, but sought to overcome it by stating that the plaintiff in his answer had admitted signing a petition for the repeal of the Full Crew Law. The learned judge inadvertently fell into error in finding that the fifteenth paragraph of the answer denied this averment. The fifteenth paragraph of the bill after reciting the facts contained in the eleventh paragraph as above, averred that by reason thereof, the action of the lodge in undertaking to expel the plaintiff was void. The denial in the answer of this averment was only a denial that the action was void, not of the preliminary matters which had in effect been admitted in the eleventh paragraph.

The question at the trial before the lodge was not whether the appellant had signed the petition for the repeal of the Full Crew Law—that was admitted,—but whether that action had been in violation of Rule 23; the appellant specifically denied that he had violated

the rule and it was incumbent on the complainant to produce evidence to support his charge. To do this it was necessary to prove that the repeal of the Full Crew Law had been officially opposed by the legislative board duly assembled; (the national legislative representative was not involved). It mattered not how many of the members of the brotherhood favored the enactment of the Full Crew Law, or how many officers of said association were active in opposing its repeal. Unless the legislative board "under their proper authorities" had regularly taken action in the premises, the appellant could use his influence against the act and not become liable to expulsion. The creation of a legislative board is authorized by Rule 22; it is not a continuing body but is organized by the consent of a majority of the lodges of the particular state and only for the approaching session of the legislature. Under the rules, its power and authority end with the session of the legislature for which it was created. Rule 25 provides how the record of the business transacted by the legislative board shall be preserved and verified—by filing with the secretary a report duly attested by the signatures of the board, and the furnishing by him of a certified copy thereof to each lodge in the State. These are the safeguards put by the rules around the drastic action provided for in Rule 23. The members of the brotherhood were not amenable to discipline for using their influence to defeat any action of their particular legislative representative, but only the action of the legislative board, duly authorized. There was no proof either before the lodge or in court that the legislative board duly constituted had taken any official action with reference to the act; the unattested, unsupported printed sheets offered at the trial in court were not evidence for any purpose. The appellant was not required to direct the trial committee how to proceed with the trial, nor to call their attention to what was necessary to make out the complainant's case. The point here raised is not an after thought; it was specifically pre-

sented to both the appellate tribunals of the brotherhood as a reason why the proceedings before the lodge were irregular and void, and in taking the same ground before the lower court and here, the appellant has not shifted his position in any manner; if the proceedings before the lodge were irregular, he was not concluded thereby and could subsequently raise the question of their legality: Weiss v. Musical M. P. Union, 189 Pa. 446.

(2) The appellant's second contention is based on the first amendment to the Federal Constitution and on Article I, Section 20, of our State Constitution. The former is not applicable here. It provides that Congress shall make no law abridging......the right of the people peaceably to assemble, and to petition the government for a redress of grievances. It was held in United States v. Cruikshank, 92 U. S. 542, that this amendment did nothing more than limit the power of Congress; it left the authority of the several states just where they found it; the right was not created by the amendment nor was its continuance guaranteed except as against congressional interference.

Our State Constitution, however, in order "that the general, great and essential principles of liberty and free government may be recognized and unalterably established" declares in article I, that......"the citizens have a right in a peaceable manner to assemble together for their common good and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrance"; and to guard against transgressions of the high powers delegated, declares that everything contained in this article, is excepted out of the general powers of government and shall forever remain inviolate. The purpose of this Bill of Rights is to prevent aggression by the government upon the individual rights of the citizen; it does not prevent the citizen from voluntarily committing their exercise temporarily to an association

of which he is a member. But where it is claimed that a citizen has temporarily relinquished such a fundamental right to such an association it must be by language so clear, definite and positive that there may be no possibility of mistake as to his intention to do so, especially where his withdrawal from such association would result in divesting him of valuable property rights. If there is any doubt upon the subject it must be resolved in favor of the citizen. We are not convinced that the clause in Rule 23 which provides for the expulsion of any member of the brotherhood "using his influence to defeat any action regularly taken by legislative boards under their proper authorities" is sufficiently definite to include a waiver of the member's constitutional right to petition the legislature to redress his grievances, or to justify his expulsion for exercising that right. There was no allegation in the complaint that the plaintiff did anything else. His joining another brotherhood, adverted to by the court below, was not a part of the charge against him and was not relevant to the proceedings. All that he did, so far as the charge, the testimony and the exhibits in the case show, was, as an individual, to petition the legislature for redress of what he considered a personal grievance. He took no part in any lobbying or improper attempt to influence or control legislation on the subject. Nor can we dismiss this right by using the phrase from Passmore Williamson's Case, 26 Pa. 9, relied on by the court below and the learned counsel for the appellant, that he "carries the key of his prison in his own pocket," and can thus regain his right to petition the legislature by withdrawing from the brotherhood and surrendering his property rights therein. If the fetters were not of his own making he has a right to have them stricken off without the loss of his property rights. When the contract which he made with his fellow associates in the brotherhood (Steinert v. United Brotherhood, 91 Minn. 189, 97 N. W. 668,) is attempted to be extended beyond its obvious meaning

and so construed as to deprive him of a constitutional right which he had not definitely relinquished even temporarily, he has a right to say: "I entered into no such contract": Schneider v. Local Union No. 60, 116 La. 270, 40 Southern 700. The defendant might just as well have attempted to expel him because he voted for some candidate disapproved by the legislative representative or legislative board. Courts will not give effect to the constitution and by-laws of a voluntary unincorporated association, nor regard a member thereof as coming under any obligation or disability growing out of such constitution or by-laws not proved to have been assumed by him in such a manner as would have established a valid contract between individuals not members of the association: Austin v. Searing, 16 N. Y. 112. We are of opinion that the language of Rule 23 does not justify the construction placed upon it by the brotherhood or the court below.

(3) The defendant brotherhood, as set forth in its constitution and rules was organized to unite railroad trainmen; to promote their general welfare and advance their interests, social, moral and intellectual; to protect their families by the exercise of a systematic benevolence; and to endeavor to establish mutual confidence and create and maintain harmonious relations with their employers. The legislative department was created for the purpose of protecting the interests of its members along legislative lines in the several states and territories.

It is against the law of this Commonwealth and contrary to public policy for any individual, association or corporation to employ an agent, attorney or representative to influence the passage of legislation or to interfere with or control legislative action: Clippinger v. Hepbaugh, 5 W. & S. 315; Spalding v. Ewing, 149 Pa. 375; Kuhn v. Buhl, 251 Pa. 348. See also Le Tourneux v. Gilliss, 82 Pac. 627 (Cal.); Crichfield v. Bermudez Asphalt Paving Co., 51 N. E. 552 (Ill.); Houlton v.

Dunn, 61 N. W. 898 (Minn.); Powers v. Skinner, 34 Vt. 274. This does not forbid an individual or association, or their attorney or representative, from presenting their views relative to pending legislation to legislative committees and urging its passage or defeat, or undertaking by petition, legitimate argument, and a fair showing of the circumstances to procure such action; it does strike at lobbying, as it is commonly understood, or the solicitation of members of a legislative body with intent to influence their votes by personal agency, and it matters not how this influence is attempted to be exerted, whether by promises, threats or other devious methods. Nor does it matter how meritorious is the end thus sought to be attained; any interference with the creation of laws and their proper enforcement is contrary to the law and public policy of this State. This rule applies to labor organizations as well as all other associations. As respects the laws they stand on the same plane,—neither higher nor lower,—as any other lawful association, organization or corporation. There is, however, nothing in the constitution and general rules of the defendant brotherhood which is in contravention of this law or public policy. The plaintiff, in his bill, alleged that the brotherhood, through its legislative department was in this respect violating the law of the State and was seeking to influence and control legislation by personal and improper influences, and his allegations, if supported by adequate proof, would have justified the court below or this court in holding that however laudable the purpose of its creation, in its actual practice and working, the legislative department was proceeding contrary to law and public policy, for the Supreme Court has pointed out in McVey v. Brendle, 144 Pa. 235, p. 248, that courts will distinguish between an object and the means employed to reach it. The answer, however, explicitly denied the averments of the plaintiff's bill relative to this branch of the case, and as before pointed out, there was no proof whatsoever sub-

mitted at the trial in the court below on the subject. The plaintiff, therefore, failed to establish this allegation in his bill, and the court below committed no error in refusing the requests presented with respect to it.

The fourth, fifth, seventh, eighth, ninth, twelfth, eighteenth, nineteenth, twentieth, twenty-first and twenty-second assignments of error are sustained, the decree of the court below is reversed, the action of the defendants in expelling the plaintiff from the Brotherhood of Railroad Trainmen is set aside, and it is ordered that he be reinstated to full membership therein. Costs to be paid by the appellees.