## Kenneck et al. v. Pennock et al.

*Romain C. Hassrick*, for plaintiffs; *Witkin & Egan*, for defendants.

ALESSANDRONI, J., May 29, 1931.—The bill of complaint sets forth that the plaintiffs were lawfully elected to membership of the Republican Ward Executive Committee of the Thirty-fourth Ward of the City of Philadelphia at the primary election of May 20, 1930, and that, by virtue of the provisions of the Act of July 12, 1913, P. L. 719, as amended, entitled "The Uniform Primaries Act," they are entitled to be seated as such in the ward executive committee of the Republican Party of said ward; that upon certain dates stated therein, beginning with August 4, 1930, and subsequent thereto, the defendants illegally excluded the several plaintiffs from membership in the said ward executive committee, and pray that an injunction may issue, preliminary until hearing and perpetually thereafter, enjoining and restraining the Republican Executive Committee of the Thirty-fourth Ward from officially meeting and transacting any business until the petitioners shall have been seated.

To this bill the defendants have filed preliminary objections alleging that: (1) Upon the face of the said bill the plaintiffs are not entitled to the relief claimed; (2) the plaintiffs have not, in or by the said bill, shown any cause entitling them, or any of them, to the relief prayed; (3) this court has no jurisdiction of the said bill; (4) the facts set forth in said bill reveal that the cause is without the jurisdiction of the courts of equity of this Commonwealth; with final prayer that the bill be dismissed.

The objections may be summarized into the question of whether or not the matters complained of and the relief prayed for are within the jurisdiction of a court of equity. For the purposes of the consideration of this question, all of the facts alleged in the bill must be taken and admitted to be true.

The plaintiffs rely exclusively upon the provisions of the Uniform Primaries Act of July 12, 1913, P. L. 719, in support of the right of this court to entertain their complaint and to grant them relief.

Before the passage of the Uniform Primaries Act, it is clear that equity was without jurisdiction to entertain a bill of this nature. It is pertinent to inquire, therefore, if the provisions of the Uniform Primaries Act have created a right in the plaintiffs that had not existed prior thereto. Its title, as well as its several sections, indicate clearly that the legislative intent was to establish rules regulating the manner and method of electing party candidates and party officers. Frequent reference is made in the act to the rules of the party and its subdivisions. Language such as the following appears in section one: "All such party officers as are required by the rules of the several political parties to be elected by the vote of the party electors shall be elected at primaries held in accordance with the provisions of this act. . . ." And further on, "The State committee of each political party may

make such rules for the government of such State committee, not inconsistent with law, as it may deem expedient; and may also revoke or alter or amend, in any manner not inconsistent with law, any present or future rules of such State committee," as well as in the following paragraph: "National committeemen shall be elected by the State committee of each respective party, unless the rules of the National party otherwise provide." Again, section two providing, "Any party or body of electors, one of whose candidates at either the general or municipal election preceding the primary polled at least five per centum of the largest entire vote cast for any elected candidate in any county, is hereby declared to be a political party within said county; and shall nominate all its candidates for office in such county and in all political districts within said county, or of which said county forms a part, and shall elect such party officers as its rules provided shall be elected . . ." evidences the legislative intent to leave to the political parties themselves the formulation, enactment and execution of their own rules. The act nowhere purports to confer the right upon one duly elected by the party electors to sit in an organism, council or committee of the party. We are unaware of any such claim by the petitioners, who argue that the language found in sections two, three and seventeen, recited in their bill, must be construed to confer upon them the right to sit in the committee. To do so would be to extend the meaning of the language of the act, as well as the legislative intent, beyond its clear purport. Failing to find any authority for the plaintiff's contention in the act and having recourse to the authorities defining the law prior thereto, we are led to the conclusion that the principle enunciated by Mr. Justice Dean in the case of Kearns v. Howley, 188 Pa. 116, is still controlling. In that case, Howley, chairman of a party committee, in violation of the rules filled vacancies with names of persons not elected, and was about to complete the roll with names of others appointed by himself; he had erased from the roll the names of duly elected members, and was about to wrongfully appoint others, the prayer of the bill being that Howley be restrained by injunction from erasing the names and that he be enjoined from filling vacancies or in any way tampering or interferring with the roll. The defendants made no answer, contenting themselves with denying the jurisdiction of the court. The chancellor entered a decree restraining the defendants and otherwise granting the relief sought. In reversing the decree, Mr. Justice Dean said: "It is clear to us that no property right in plaintiffs or in others as members of the county committee existed. As a purely political committee it neither owned nor pretended to own or to derive any benefit from anything of value held by them in common. . . . But there is no statutory injunction or prohibition directed to chairmen and secretaries of county committees; they are amenable alone to their party, which is purely political." Citing the case of McKane v. Adams, 123 N. Y. 609: " 'His status therefore is that, though his town association elected him as a delegate to the general committee of the county organization, the members of that body have refused to admit him to association with them in their office. And if they would and will not associate with him, upon what reasoning or principle should they be compelled to, and the aid of a court of justice invoked? The right to be a member is not conferred by any statute; nor is it derivable as in the case of an incorporate body. It is by reason of the action and of the assent of members of the voluntary association that one becomes associated with them in the common undertaking, and not by any outside agency or by the individual's action. Membership is a privilege which may be accorded or withheld, and not a right which can be gained independently and then enforced. So

714

when, as by the plaintiff's own showing, the committee refused to admit him as a member or to confirm his election, he was remediless against that refusal. No rights of property or of person were affected, and no rights of citizenship were infringed upon.' . . . The constitution and statutes of the commonwealth guarantee to all citizens the right of self-government by protecting them in the exercise of the elective franchise for all officers voted for at state and local elections; and lately, the law has gone further, and has so far recognized political parties as to pass an act prescribing the duties of officers at primary elections, and imposing severe penalties for misconduct. But beyond this, political parties and party government are unknown to the law; they must govern themselves by party law. The courts cannot step in to compose party wrangles, or to settle factional strife. . . ."

So, also, in Horan v. Blenk, 17 Dist. R. 363 (1908), a similar effort was made by the plaintiff to invoke the aid of the court in compelling the chairman of the Democratic Ward Committee to receive the certificate of election of one duly elected thereto under the Uniform Primaries Act of 1906. The proceeding was one by mandamus. The question involved, however, was identical. In overruling the plaintiff's demurrer to the return which admitted the substantial facts set forth in the petition, the court held that it was without jurisdiction to remedy the refusal of the chairman of that ward executive committee to receive the certificate of election or to permit him to be present, vote and participate at its meetings.

Neither the brief of the plaintiffs nor our careful examination of the cases has been productive of any authority counter to this well-established principle. The plaintiffs, therefore, failing to make out a case for equitable intervention, the preliminary objections must be sustained and the bill dismissed.

And now, to wit, May 29, 1931, the preliminary objections are sustained and the bill dismissed, at the cost of the plaintiffs.